**A. F. L. MOTORS, INC., a Wisconsin corporation, Plaintiff,**

v.

**CHRYSLER MOTORS CORPORATION, a Delaware corporation, Defendant.**

**No. 60–C–11.**

United States District Court
E. D. Wisconsin.
April 28, 1960.

Harry J. Aronson, Milwaukee, Wis., for plaintiff.

Victor M. Harding, Milwaukee, Wis., and Keith A. Jenkins, Detroit, Mich., for defendant.

John W. Reynolds, Atty. Gen., and Leroy L. Dalton and Robert J. Vergeront, Asst. Attys. Gen., Madison, Wis., for intervenor, James L. Karns, Commissioner of Motor Vehicle Department of Wisconsin.

Joseph Goodman of Wheeler, Van Sickle, Day & Goodman, Madison, Wis., for Wisconsin Automotive Trades Association, amicus curiæ.

GRUBB, District Judge.

This action was commenced in the Circuit Court of Milwaukee County, Wisconsin, to enjoin the defendant from cancelling plaintiff's franchise as a dealer in De Soto and Plymouth automobiles. Plaintiff is relying on Section 218.01(3) (a), subds. 16 and 17 of the Wisconsin Statutes.

The Circuit Court of Milwaukee County issued a temporary restraining order, ex parte, restraining defendant from cancelling the franchise. Following removal of the action to this court on the basis of diversity of citizenship, defendant made a motion to dissolve the restraining order. Plaintiff is resisting this motion.

The Commissioner of the Motor Vehicle Department of the State of Wisconsin is an intervenor. A brief amicus curiae has been filed on behalf of the Wisconsin Automotive Trades Association.

The franchise in question was entered into on August 28, 1957. It provides that " 'Form 57–DS–P' constitutes a part of this agreement with the same force and effect as if set forth at length herein, \* \* \*." There is no express expiration date set forth in the contract itself. It carries the certification that it was finally executed at Detroit, Michigan.

Form 57–DS–P contains a provision on cancellation in paragraph 21. The material portions of it provide that:

"DIRECT DEALER may terminate this agreement on not less than thirty (30) days' written notice.

"De Soto-Plymouth may terminate this agreement on not less than ninety (90) days' written notice on (1) the failure of DIRECT DEALER to perform fully any of DIRECT DEALER'S undertakings and obligations in Paragraphs 7 through 10 and Paragraph 14 of this agreement, \* \* \*."

Paragraph 7 provides in part as follows:

"DIRECT DEALER agrees to sell energetically at retail \* \* \*.

"DIRECT DEALER agrees to sell at retail in such Sales Locality the number of new De Soto passenger cars necessary to fulfill DIRECT DEALER'S Minimum Sales Responsibility for De Soto passenger cars, as defined below."

There is a similar paragraph with reference to Plymouth passenger cars. Thereafter follows a formula for the determination of the Direct Dealer's minimum sales responsibility. There are elaborate provisions for determining this minimum responsibility, but basically it is calculated in the following manner:

1. Defendant computes the ratio of the number of new Plymouths registered

during the base period in the so-called Chicago region (parts of Wisconsin, Illinois, Indiana, and Iowa) to the number of new domestic passenger car registrations for all makes of cars.

2. The resulting ratio or percentage is then applied to the number of new domestic passenger car registrations during the same period in the dealer's sales locality. This becomes minimum sales responsibility for Plymouth in that sales locality.

3. If the sales locality is a metropolitan area, such as Milwaukee County, this minimum sales responsibility is shared equally by the dealers selling Plymouths in that sales locality. Thus, if there are ten dealers in the locality, each is responsible for 10 per cent of the locality's minimum sales responsibility.

The same method is followed with reference to De Soto automobiles.

Paragraph 30 of Form 57–DS–P provides that the agreement will be interpreted and construed according to the laws of the State of Michigan. It also provides that if any part of the agreement conflicts in any particular with any law of any State having jurisdiction, such part will be of no force and effect in that political unit.

Chapter 218 of the Wisconsin Statutes deals, among other things, with automobile dealers. Section 218.01(3) (a), subd. 16 makes it illegal for a motor vehicle manufacturer to attempt to induce or coerce any automobile dealer to enter into any agreement with such manufacturer to do any other act "unfair to said dealer, by threatening to cancel any franchise existing between such manufacturer, * * * and said dealer."

Subsection 17 of said section penalizes a manufacturer who has "unfairly, without due regard to the equities of said dealer and without just provocation, canceled the franchise of any motor vehicle dealer." Nowhere has the legislature defined the words "unfairly," "the equities of said dealer," or "without just provocation."

The testimony taken shows that the regional supervisor for the defendant made computations along the lines of the formula. These computations show that plaintiff has fallen far short of meeting his minimum sales responsibility both as to De Soto and Plymouth automobiles.

On October 13, 1959, defendant served a ninety day notice of cancellation of franchise on plaintiff. It is the testimony of the defendant that this notice was served because of the failure of the plaintiff to meet the minimum sales responsibility under the contract. This action was brought and a restraining order obtained in the Circuit Court of Milwaukee County prior to the expiration of the ninety days.

This statute was before the Wisconsin Supreme Court once in 1955 in the case of Kuhl Motor Co. v. Ford Motor Co., 270 Wis. 488, 71 N.W.2d 420, 55 A.L.R. 2d 467. In the original opinion it is held that the statute merely provides certain penalties and does not create a cause of action on the part of the dealer. In a concurring opinion it is held that the statute is unconstitutional. A detailed dissenting opinion was filed. The original decision was by a divided court, four to three. On motion for rehearing, one of the justices withdrew his concurrence in the concurring opinion and then joined the prior dissenting opinion. By reason of this, the prior dissenting opinion upholding the constitutionality of the statute and holding that it is efficacious to provide a cause of action on behalf of the dealer became the majority opinion, and the constitutionality of the statute and the creation of the cause of action was upheld four to three.

There have been no Wisconsin cases cited, and the court has found none, since that time which throw any further light on the question. The Kuhl Motor Co. case arose on an order sustaining a demurrer to the complaint. The briefs in the Kuhl case indicate that the question of vagueness of this language was presented to the court. The Supreme Court did not comment upon the meaning of the words "unfairly," "the equities of

said dealer," or "without just provocation." We, therefore, have the situation where these terms were not defined by the legislature and as of this date have not been defined by the Wisconsin Supreme Court, but the validity of the statute itself has been upheld and has been held to apply to create a cause of action on the part of the dealer for its violation. The decision fails to indicate whether such cause of action is legal for damages or equitable to prevent the proscribed action on the part of the manufacturer, or both.

This statute was before the Court of Appeals for the Seventh Circuit in Buggs v. Ford Motor Co., 1940, 113 F.2d 618. In that case the contract was entered into before the statute in question was passed, and the Court of Appeals found it unnecessary to pass upon either the validity or the interpretation of the statute.

While counsel for defendant asserted defendant was not relying upon any constitutional question so far as this motion is concerned, defendant did plead alleged unconstitutionality of the statute, and that question must necessarily be in the court's mind in this case.

Substantially similar statutes have been before the following courts:

United States District Court, D. Minnesota, Fourth Division, Willys Motors, Inc. v. Northwest Kaiser-Willys, Inc., 142 F.Supp. 469, wherein Judge Devitt upheld a similar Minnesota statute against the contention of invalidity as impairing the obligation of a contract.

A three-judge United States District Court, D. Colorado, in General Motors Corp. v. Blevins, 144 F.Supp. 381, held a similar statute unconstitutional. Among the grounds set forth was the vagueness of the words "unfairly, without due regard to the equities of said dealer, and without just provocation" as violative of the Fourteenth Amendment of the United States Constitution for failure to provide an ascertainable standard of guilt.

United States District Court, E. D. Virginia, Norfolk Division, E. L. Bowen & Co., Inc. v. American Motors Sales Corp., Hudson Motor Division, 153 F. Supp. 42, wherein a similar statute was upheld, Judge Hoffman holding that it was not too vague.

The United States Court of Appeals for the Fifth Circuit in Best Motor & Implement Co., Inc. v. International Harvester Co., 252 F.2d 278, applied a similar statute in a fact situation. A footnote makes reference to constitutional problems, but apparently they were not raised or were not reached in that particular case.

The court is unable to get any help from the decisions above cited as to the exact meaning and application of the language in question.

Could a dealer avoid cancellation of a contract which he had knowingly entered into by claiming that the contract was unfair to him because it only provided for a discount of 20 per cent off the suggested retail price on his purchases of new cars from the manufacturer rather than a 40 per cent discount which the dealer might claim necessary to be fair to him?

Could a dealer prevent the cancellation of a contract because of a claim that the contract was unfair in that it provided for cash payments by the dealer on new car purchases instead of extending credit until the dealer had sold at retail automobiles purchased from the manufacturer?

There are many, many circumstances where the meaning of these words comes into question. Who is to decide? Is a jury or a court to rewrite every contract entered into by an automobile dealer to apply the thoughts of that jury or of that judge as to what is "unfair" and as to what is "inequitable"? If so, in these cases there is a situation set up where the parties are subject to the whims, likes and dislikes, prejudices, or preconceptions of juries or judges. No attorney could conscientiously advise a client

as to what contract provisions would be valid.

These problems are pointed out to invite the parties to bring proper proceedings in the State court to endeavor to get a construction of these terms so that when this case comes on for trial this court will have the guidance of the interpretation of the Wisconsin court of the Wisconsin statutes and will have some standards to apply. It is a situation in which the abstention doctrine could well be applied. See note at 24 F.R.D. 481 and cases there cited.

■ Coming down to the motion now under consideration, the court is of the opinion that the same standards should be applied on the question of continuing an ex parte restraining order as would be applied to an application for a temporary injunction. One of the considerations is whether the party applying has an adequate remedy at law. There is no doubt but that if plaintiff prevails the proof of damages would be difficult. Damages for personal injuries, for pain and suffering, and for partial disability are difficult to ascertain. Damages for breach of contract by way of lost profit are also difficult to ascertain. There are many situations where damages are hard to prove and are uncertain. Nevertheless, they can be and are awarded.

There is no showing here that the defendant will probably not be able to respond in damages in the event plaintiff prevails on the trial on the merits.

In the brief in this case and on the oral argument, much was said about it being unfair to require the plaintiff to sell one-tenth of the projected number of Plymouth and De Soto automobiles in the Milwaukee area. The inference was made that the plaintiff is a "small operator" as compared to some of plaintiff's competitors selling the same vehicles. The evidence shows that three out of the ten dealers actually sold about 70 per cent of these automobiles in the Milwaukee area. Plaintiff has offered no evidence of things which might enter into the question as to whether this is an "unfair" allocation. No evidence was offered with reference to (1) plaintiff's capitalization or credit; (2) that of other Plymouth and De Soto dealers; (3) comparable facilities such as square feet of garage space or other garage facilities; (4) number of employees, salesmen, or mechanics that the physical facilities can accommodate; and (5) the effect, if any, of the location of plaintiff's physical facilities as compared with the location of its competitors.

Nothing has been offered by plaintiff from which the court could endeavor to make a finding as to whether the formula is "unfair." It is apparent that the formula, as defendant seeks to apply it here, is rigid and could conceivably be applied arbitrarily and without regard to the factors which should be taken into consideration. The court cannot take judicial notice of any of the suggested things above and many other things which might bear upon the question as to whether the contract was "unfairly" applied and which are not in evidence and which might lead the court to believe that the contract was "unfair" or did not have due regard for the "equities" of the plaintiff, or that the contract was cancelled "without just provocation."

■ These questions, together with the uncertainty as to how this language will be interpreted by the Wisconsin courts, present a situation where this court cannot make a finding, on this record, that the plaintiff will probably prevail. The court holds that the plaintiff has failed to meet the burden imposed upon the plaintiff on an application for a temporary injunction.

Defendant's counsel is to prepare proposed findings of fact and conclusions of law in conformity herewith, setting forth that plaintiff has failed to meet the requisite burden of proof for a temporary restraining order, submitting such proposed findings of fact, conclusions of law, and order dissolving the previously entered temporary restraining order to opposing counsel for approval as to form only.

It will be unnecessary to enter any formal order holding this case in abeyance to await a construction by the State courts. In its normal order this case will not be reached for trial on the merits for many months, giving the parties ample opportunity to endeavor to get an authoritative construction of the statute by the State courts. If such proceedings are instituted promptly and pressed vigorously, should this case, in the normal course of events, come on for trial before there is an authoritative determination in the State courts, this court will then entertain a motion to withhold adjudication under the abstention doctrine until there is such an authoritative construction by the State court.