KERRIGAN, J.
 

 Defendant Chrysler Motors Corporation (Chrysler) appeals from a preliminary injunction granted plaintiff Thayer Plymouth Center, Inc. (Thayer) on November 10, 1966, enjoining Chrysler from terminating a Plymouth dealership agreement existing between Thayer and Chrysler. Chrysler has also filed a petition for writ of supersedeas seeking a stay of the preliminary injunction.
 

 In June 1961 Chrysler and Thayer entered into a direct dealer agreement for the sale of new Plymouth automobiles. Under the provisions of the agreement, Thayer is given the nonexclusive right to sell Plymouths in a sales locality situated within an 8-9-mile radius of the cities of Fullerton and Buena Park; the duration of the contract is
 
 not
 
 for a fixed term, but is to continue only as long as the parties perform its terms and conditions; the dealer’s primary responsibility is to promote the sale and servicing of Plymouth products; Thayer agrees to meet a “minimum sales responsibility” (MSR) requirement, which simply means that it agrees to sell a certain number of Plymouths periodically, based upon a formula defined in the contract. The grounds for termination, and the method whereby termination may be effected, are also precisely set forth: the dealer may cancel the contract for any reason on 30 days’ written notice; the manufacturer may terminate for various reasons, including Chrysler’s right to cancel on 90 days’ notice in the event Thayer fails to meet its sales quota (MSR).
 

 On June 17, 1966, Chrysler notified Thayer that it was terminating the dealership contract at the expiration of 90 days for the purported reason that Thayer had failed to maintain its quota of ear sales (MSR).
 

 Thayer countered by filing a declaratory relief action in the Orange County Superior Court on August 25, 1966, praying for an adjudication to the effect that Chrysler’s
 
 *299
 
 notice of termination to Thayer was void. Thayer also sought a preliminary injunction prohibiting Chrysler from giving effect to the notice of termination pending the determination of the lawsuit. Thayer obtained an order to show cause why a preliminary injunction should issue, and a hearing on the order to show cause was set for September 7, 1966. Thayer’s application for a preliminary injunction was granted. Chrysler was then successful in having the suit removed to the United States District Court and, upon hearing in the district court, Thayer’s request for a preliminary injunction was denied and the Orange County preliminary injunction was vacated.
 

 Thayer then commenced this action on September 15, 1966, seeking specific performance of the dealership contract as well as damages for the breach of the contract by Chrysler. Chrysler again attempted to have the cause removed to the United States District Court, but the federal tribunal determined that it lacked diversity jurisdiction in this suit and remanded the cause to the Orange County Superior Court. On October 26, 1966, Thayer made application in the state court for a preliminary injunction. On November 10, 1966, a preliminary injunction issued requiring specific performance of the dealership contract
 
 pendente lite.
 

 Chrysler appeals from the order granting the preliminary injunction and predicates its attack on the following grounds: (1) The dealership contract is one requiring continuing, cooperative performance by the parties, and is not subject to specific performance; (2) the showing of probable ultimate success in the lawsuit is a necessary condition to the issuance of a preliminary injunction, and Thayer has failed to make such a showing; and (3) Thayer has an adequate remedy at law for damages, and consequently, an injunction should not issue, the effect of which is to decree specific performance.
 

 A contract which requires a continuing series of acts and demands cooperation between the parties for the successful performance of those acts is not subject to specific performance.
 
 (Long Beach Drug Co.
 
 v.
 
 United Drug Co.,
 
 13 Cal.2d 158, 171 [88 P.2d 698, 89 P.2d 386];
 
 Whipple Road Quarry Co.
 
 v.
 
 L. C. Smith Co.,
 
 114 Cal.App.2d 214, 216 [249 P.2d 854] ;
 
 Bethlehem Engineering Export Co.
 
 v.
 
 Christie,
 
 105 F.2d 933 [125 A.L.R. 1441] ;
 
 Bach
 
 v.
 
 Friden Calculating Machine Co., Inc.,
 
 155 F.2d 361, 366;
 
 Alpha
 
 
 *300
 

 Distributing Co.
 
 v.
 
 Jack Daniels Distillery,
 
 207 F. Supp. 136, 138, affd. 304 F.2d 451.) An injunction cannot be granted to prevent the breach of a contract, the performance of which would not be specifically enforced. (Code Civ. Proc., § 526, 2d subd. 5; Civ. Code, § 3423, subd. Fifth.) Courts of equity will not decree the specific performance of contracts which, by their terms, stipulate for a succession of acts whose performance cannot be consummated by one transaction inasmuch as such continuing performance requires protracted supervision and direction.
 
 (Poultry Producers etc. Inc.
 
 v.
 
 Barlow,
 
 189 Cal. 278, 289 [208 P. 93].) A permanent injunction prohibiting a manufacturer from breaching its contract with a distributor will not be granted where the effect of the injunction would be to specifically enforce the dealership agreement requiring the manufacturer to sell its products to the dealer over an indefinite term, inasmuch as such a decree would impose upon the court the impossible task of supervising continuous performance by the parties; under such circumstances, the dealer should be denied equitable relief and left in a position where he may assert his legal rights under the contract.
 
 (Long Beach Drug Co.
 
 v.
 
 United Drug Co., supra,
 
 13 Cal.2d 158, 171-172.) A preliminary injunction to prevent the termination of an exclusive distributorship contract is properly denied where the effect of the injunction would require a manufacturer to entrust the marketing of its products in a wide area to a distributor with whom a relationship of confidence and cooperation has been rendered impossible by reason of the pendency of the lawsuit; however, upon the trial of the action, the dealer may recover any damages sustained by reason of a wrongful termination of the distributorship agreement.
 
 (Alpha Distributing Co.
 
 v.
 
 Jack Daniels Distillery, supra,
 
 207 F. Supp. 136, 138, affd. 304 F.2d 451.)
 

 While Thayer urges that the contract involved is basically a simple one whereby it pays cash for Plymouths on delivery, it is painfully manifest that the provisions of the contract are multiple in number and contemplate almost daily transactions between the parties. The contract provides for maintenance of extensive dealership records, the processing of orders for new ears, production scheduling by Chrysler ; delivery terms, maintenance of adequate dealership facilities, the establishment of prices for new models and potential price changes, rebates to dealers, incentive sales programs, the handling of discontinued models, liability for breach of;
 
 *301
 
 warranty provisions, and extensive advertising campaigns. Not only is the contract voluminous, but the contact between parties must necessarily be continuous in nature.
 

 Another criteria militates against the trial court’s action in granting the preliminary injunction. The relief that Thayer seeks in this suit is primarily specific performance of a dealership contract. From the foregoing authorities, it is apparent that Thayer, upon the basis of the present record, will not be successful in obtaining permanent equitable relief. A preliminary injunction will not issue where it is doubtful that the party seeking the preliminary injunction will ultimately prevail in the lawsuit.
 
 (Willis
 
 v.
 
 Lauridson,
 
 161 Cal. 106, 117 [118 P. 530].) A preliminary injunction will not issue in a doubtful case; the denial of a preliminary injunction is amply justified where it is doubtful what the outcome may be on a final hearing of the cause.
 
 (Hueneme, Malibu & Port Los Angeles Ry.
 
 v.
 
 Fletcher,
 
 65 Cal. App. 698, 703 [224 P. 774].) In the ordinary manufacturer-distributor relationship where, as here, the agreement has no fixed term or duration, the realities of the business world would indicate that the dealership agreement cannot last forever. (See
 
 Alpha Distributing Co.
 
 v.
 
 Jack Daniels Distillery, supra,
 
 207 F. Supp. 136, 138, affd. F.2d 451.)
 

 It would, consequently appear that all Thayer can ultimately recover is damages in the event that it can prove that Chrysler wrongfully terminated the dealership contract. Chrysler maintains that it was justified in terminating the dealership contract because of Thayer’s failure to meet its MSR quota. Thayer does not deny in its pleadings that it failed to meet its sales quota, but maintains that Chrysler is using the MSR formula as an arbitrary, unfair and coercive standard of performance for the purpose of terminating Thayer and thereafter establishing a factory-owned dealership facility in Thayer’s location. Whether Chrysler acted properly or wrongfully in terminating the direct dealer agreement with Thayer will eventually be a matter for the determination of the trial court. However, at this stage of the proceedings, Thayer has failed to contradict the figures given by Chrysler as to Thayer’s new Plymouth sales, which figures reflect that Thayer’s sales performance has been less than that required by the MSR provision. The MSR formula has been ruled to be a fair and reasonable method for computing sales quotas in the majority of cases in which the
 
 *302
 
 question has been raised.
 
 (Victory Motors of Savannah, Inc.
 
 v.
 
 Chrysler Motors Corp.,
 
 357 F.2d
 
 429; Sam Goldfarb Plymouth, Inc.
 
 v.
 
 Chrysler Corporation,
 
 214 F. Supp. 600;
 
 Milos
 
 v.
 
 Ford Motor Co.,
 
 206 F. Supp. 86;
 
 Leach
 
 v.
 
 Ford Motor Co.,
 
 189 F. Supp. 349.) Thayer places great reliance on the decision in
 
 Madsen
 
 v.
 
 Chrysler Corp.,
 
 261 F. Supp. 488, vac. 375 F.2d 773, but the case is not valid authority for the reason that the decision was vacated on appeal. Furthermore,
 
 Madsen
 
 is distinguishable on its facts. In
 
 Madsen,
 
 several years passed during which the plaintiff-dealer was clearly operating below its assigned MSB, but instead of indicating to the dealer that there was a possibility of termination, Chrysler executives reported the dealership was being capably conducted, suggested that Madsen operate another dealership in an adjoining city, recommended that a Valiant franchise be added, and persuaded Madsen to invest substantial funds to expand his facilities. The district court concluded that by this activity Chrysler waived strict compliance with the MSB requirement by treating it as a performance goal rather than as a condition of the dealership agreement. In the present case, Thayer was often reminded of its failure to meet its minimum sales responsibility and warned of the possibility of termination by reason thereof.
 

 A third consideration for vacating the preliminary injunction also exists. Specific performance of a contract will not be compelled when an adequate remedy exists at law, and if monetary damages afford adequate relief and are not extremely difficult to ascertain, an injunction cannot be granted.
 
 (Morrison
 
 v.
 
 Land,
 
 169 Cal. 580 [147 P. 259] ; Code Civ. Proc., § 526; 1 Pomeroy’s Equity Jurisprudence, § 221(b).) Generally, where damages afford an adequate remedy by way of compensation for breach of contract, equitable relief will be denied.
 
 (Morrison
 
 v.
 
 Land, supra,
 
 at p. 586.) A dealer’s remedy at law for damages ordinarily affords adequate relief.
 
 (A.F.L. Motors Inc.
 
 v.
 
 Chrysler Motors Corp.,
 
 183 F. Supp. 56, 60;
 
 Bateman
 
 v.
 
 Ford Motor Co..
 
 214 F. Supp. 222, 229.)
 

 In the event that the trial court should eventually determine that Chrysler wrongfully breached its contract with Thayer, then Thayer would certainly be in a position to recover damages by reason of the breach. The record before us reflects that Thayer has operated at a profit since the dealership contract was consummated; that Thayer has
 
 *303
 
 made substantial improvements in its distributorship facilities; that over 60 percent of Thayer’s gross profit is realized from the sale of Plymouths, with the balance of the gross profit being primarily derived from Thayer’s Chrysler auto: mobile franchise; that in the event Thayer is forced out of business by reason of Chrysler’s wrongful breach, it would certainly sustain substantial damages. It would not appear that such damages are unaseertainable or ‘ ‘ extremely difficult to ascertain. ’ ’ It can be readily ■ inferred that a dealership has value, and that such value would certainly be the subject of expert testimony as well as the testimony of the owner of the dealership, based upon the latter’s knowledge of the business. In the event plaintiff prevails, the proof of damages might conceivably be difficult. However, “Damages for personal injuries, for pain and suffering, and for partial disability are difficult to ascertain. Damages for breach of contract by way of lost profit are also difficult to ascertain. There are many situations where damages are hard to prove and are uncertain. Nevertheless, they can be and are awarded.”
 
 (A.F.L. Motors, Inc.
 
 v.
 
 Chrysler Motors Co., supra,
 
 183 F. Supp. 56, 60.) A dealer may recover damages for breach of an automobile distributorship contract. (See
 
 Milton
 
 v.
 
 Hudson Sales Corp.,
 
 152 Cal.App.2d 418 [313 P.2d 936].)
 

 The order granting the preliminary injunction is reversed; the preliminary injunction is vacated; and the petition for writ of supersedeas is dismissed for the reason that the issues raised therein are now moot.
 

 McCabe, P. J., and Tamura, J., concurred.
 

 A petition for a rehearing was denied November 17, 1967, and respondent’s petition for a hearing by the Supreme Court was denied December 20, 1967. Peters, J., and Tobriner, J., were of the opinion that the petition should be granted.