299 F.Supp. 653 (1968)
Boris ZEBELMAN, Max Zebelman, Shirley Zebelman, and Beyer Motors, Inc., a corporation, Plaintiffs,
v.
CHRYSLER CORPORATION and Chrysler Motors Corporation, Defendants.
No. 68 C 398(2).
United States District Court E. D. Missouri, E. D.
October 14, 1968.
*654 Martin A. Rosenberg and Weiss & Goffstein, St. Louis, Mo., for plaintiffs.
W. Stanley Walch & Gerard K. Sandweg, Jr., Thompson, Mitchell, Douglas & Neill, St. Louis, Mo., for defendants.

MEMORANDUM
MEREDITH, District Judge.
The plaintiffs, Boris Zebelman, Max Zebelman, Shirley Zebelman, and Beyer Motors, Inc., have filed a five-count complaint against Chrysler Corporation and Chrysler Motors Corporation. Count I is filed pursuant to 15 U.S.C. §§ 15 and 26 (sections 4 and 16 of the Clayton Act) and 15 U.S.C. §§ 1 and 2 (sections 1 and 2 of the Sherman Antitrust Act). It is alleged that the defendants have "combined and conspired" to restrain interstate *655 trade and commerce, and as part of such combination and conspiracy have terminated the Plymouth franchise of Beyer Motors, Inc. The plaintiffs seek treble damages and injunctive relief.
Count II is filed pursuant to §§ 416.010 to 416.140, R.S.Mo.1959 (Missouri's Antitrust Act), V.A.M.S., and alleges that the defendants have combined and conspired to restrain trade in the State of Missouri. Treble damages and injunctive relief are requested. The jurisdiction for Count II is based on 28 U.S.C. § 1332. Damages in excess of $500,000 are alleged. Diversity of citizenship is not properly alleged. Beyer Motors, Inc., is stated to be a Missouri corporation and the individual plaintiffs are alleged to "live and reside" in Missouri. Residency and citizenship are not synonymous for the purpose of jurisdiction of the United States District Courts. See Texaco-Cities Service Pipe Line Co. v. Aetna Cas. & Sur. Co., 283 F.2d 144 (8th Cir. 1960). Nor is the state of incorporation of Chrysler Motors Corporation alleged. Where diversity of citizenship does not exist, the federal courts are without jurisdiction to enforce state antitrust statutes when a case is not made under the federal act. See Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311 (1940). The plaintiffs will be ordered to amend the complaint by interlineation to allege citizenship of the individual plaintiffs and the state of incorporation of the defendant Chrysler Motors Corporation. Assuming this is done, and diversity exists, this Court has jurisdiction of this count.
Count III is filed pursuant to 15 U. S.C. § 1222. It alleges that the defendants failed to use good faith in terminating the franchise agreement with Beyer Motors, Inc. Damages and injunctive relief are sought. Count IV alleges that defendant Chrysler Motors Corporation has breached its franchise contract with Beyer Motors, Inc., by termination of the contract without cause. Specific performance of the franchise agreement, or, in the alternative, damages, is sought. Count V alleges that the defendants have committed many acts of coercion and harassment against the plaintiff Beyer Motors, Inc. Damages and an injunction against further acts of such a nature are requested. Jurisdiction under Counts IV and V is based upon diversity of citizenship under 28 U.S.C. § 1332. The remarks concerning jurisdiction of Count II also apply to Counts IV and V.
The plaintiffs have filed a motion for a temporary injunction to prevent the defendants from terminating Beyer Motors' Plymouth franchise and preventing the defendants from refusing to sell new Plymouths and accessories to Beyer Motors until the cause may be finally determined by the Court. The plaintiffs allege that their business will be destroyed before the Court can act unless a temporary injunction is issued. A hearing was held upon the plaintiffs' motion, testimony was taken, and briefs were submitted by both sides.
The Court, in determining whether a temporary injunction should be issued, must consider not only the convenience of the parties and the possible injury to them [Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944)], but also must find that there is a "reasonable certainty" that the movant will succeed at the final hearing. H. E. Fletcher Co. v. Rock of Ages Corp., 326 F.2d 13 (2d Cir. 1963); Crane Co. v. Briggs Mfg. Co., 280 F.2d 747 (6th Cir. 1960); Hall Signal Co. v. General Ry. Signal Co., 153 F. 907 (2d Cir. 1907); Ames v. Associated Musicians of Greater New York, Local 802, 251 F.Supp. 80 (S.D.N.Y.1966), aff'd 359 F.2d 777 (2d Cir. 1966).
Counts I and II of the complaint allege violations of the antitrust statutes of the United States and of Missouri. The plaintiffs did not introduce any substantial evidence at the hearing concerning the allegations of Counts I and II. Nor did they discuss these counts in the briefs submitted after the hearing. The facts offered to *656 support a temporary injunction should be fully and definitely disclosed. See Set-O-Type Co. v. American Multigraph Co., 55 F.2d 800 (6th Cir. 1932). It would be an abuse of judicial discretion to grant a temporary injunction based upon only the allegations of Counts I and II in this instance.
Count III of the complaint alleges that the defendants have failed to act in good faith as required by the Automobile Franchise Dealers Act (15 U.S.C. § 1222). The Third Circuit in Bateman v. Ford Motor Co., 302 F.2d 63 (1962), ruled that, in an action based upon failure of the manufacturer to use good faith in dealing with the automobile dealer as required by 15 U.S.C. § 1222, the general equity power of the Court enabled it to enjoin the termination of an automobile franchise in bad faith. It is the plaintiffs' contention that the Minimum Sales Responsibility (MSR) quota, in its formulation and use, does not provide an adequate standard for termination and is utilized by Chrysler as a sham for terminating franchises actually terminated for other reasons. The plaintiffs allege that a termination based upon a failure to meet the Minimum Sales Responsibility does not comply with the good faith requirements imposed by 15 U.S.C. § 1222. It is alleged that whatever validity the MSR possessed as a basis for termination had been waived.
The individual plaintiffs, Boris Zebelman, Max Zebelman, and Shirley Zebelman, are shareholders of the plaintiff corporation Beyer Motors, Inc. Beyer Motors entered into a Plymouth Direct Dealer Agreement with Chrysler Motors Corporation on May 3, 1957. The contract provides that Beyer Motors could purchase for resale new Plymouth automobiles, parts, and accessories. The dealer, Beyer Motors, could terminate the agreement with thirty days written notice. Chrysler could terminate the agreement for five enumerated reasons upon ninety days written notice. One of these enumerated reasons was "the failure of Direct Dealer to perform fully any of Direct Dealer's undertakings and obligations in Paragraphs 7 through 10 and Paragraph 14 of this agreement." Paragraph 7 of the agreement provides that the dealer, Beyer Motors, agrees to sell at retail "the number of new Plymouth passenger cars necessary to fulfill Direct Dealer's Minimum Sales Responsibility, as defined below."
Chrysler Motors Corporation notified Beyer Motors, Inc., on June 13, 1968, that it was terminating the agreement of May 3, 1957, effective ninety days from date. The reason for the termination was Beyer Motors' failure to sell at its Minimum Sales Responsibility level. Beyer Motors sold at the following MSR percentages in recent years:

1964 (calendar year) 116 % of MSR
1965 (9 months) 74 " " "
1966 (Model year) 69.4 " " "
1967 (Model year) 47.6 " " "
1968 (7 months of model year) 49.3 " " "

The plaintiffs admit Beyer Motors' failure to meet its Minimum Sales Responsibility as required by the franchise contract. The plaintiffs' main contention is that the use of the MSR formula as a basis for terminating the franchise does not comply with the good faith requirement of 15 U.S.C. § 1222. The alleged bases for this failure of the MSR standard is: (1) that the MSR formula is "replete with a number of inequities"; (2) that sixty-two of one hundred sixty-two Plymouth dealers in the St. Louis region did not sell at their MSR for the period of October 1967 to April 1968, including seven out of eleven dealers in St. Louis. The plaintiffs allege that "good faith" would require termination of all sixty-two Plymouth franchises *657 which failed to sell at MSR during this period.
This case is similar to the situation which confronted the California Court in Thayer Plymouth Center, Inc., v. Chrysler Motors Corp., 255 Cal.App.2d 300, 63 Cal.Rptr. 148 (1967). In that case the plaintiff contended that the MSR formula was arbitrary and unfair, relying in part on Madsen v. Chrysler Corp., 261 F.Supp. 488 (N.D.Ill. 1966), vacated as moot 375 F.2d 773 (7th Cir. 1967). The Court in Thayer held that a temporary injunction prohibiting termination of the franchise should not issue because, among other reasons, the plaintiff did not contradict the failure to sell at MSR, and because the MSR formula had been determined to be a fair and reasonable method for computing sales quotas. It is to be noted, however, that the plaintiff in Thayer did not allege a cause of action under 15 U.S.C. § 1222.
The Minimum Sales Responsibility figure is determined as provided by the terms of the franchise contract. The MSR formula has been found to be fair and reasonable by courts other than in the Thayer case. See, e. g., Victory Motors of Savannah, Inc. v. Chrysler Motors Corp., 357 F.2d 429 (5th Cir. 1966). Considering the alleged inequities asserted by the plaintiffs in the present case, the evidence before the Court, and that courts have held the MSR formula reasonable in other contexts, it would be inappropriate to issue a temporary injunction. It is not possible for the Court to say there is a reasonable certainty that, in view of these factors, the MSR will be determined at the final hearing to violate per se the good faith requirement of the statute.
The evidence showed that Chrysler representatives visited Beyer Motors many times during this period in an attempt to work with the dealer in improving his sales. The attitude of Boris Zebelman was considered a major cause of the below average sales of Beyer Motors. The Chrysler representatives considered other factors to be: insufficient new car inventory; inadequate advertising; the bad appearance and uncleanliness of the physical plant; the lack of adequate management; and failure to hire sufficient salesmen and mechanics. The Chrysler representatives discussed all of these areas with Boris Zebelman. Termination of the dealership for failure to meet MSR was discussed with him, and termination was recommended as early as April and June of 1967. The evidence also indicates that Boris Zebelman at one time was contemplating getting out of the new car business.
The plaintiffs also contend that Beyer Motors was having a labor dispute during the period of late 1966 through November of 1967, which prevented it from meeting MSR. The franchise agreement provides in paragraph 28 that neither party will be liable for failure to perform its part of the agreement when such failure is due to a labor dispute beyond the control of the parties. The plaintiffs testified that Beyer Motors was having a disagreement with a union during the late 1966 to November 1967 period, and stated this was the reason for not hiring additional salesmen. There was no strike, however, and there was no showing that the disagreement could be labeled a "labor dispute" within the meaning of the agreement. It is also extremely doubtful that the poor sales record of Beyer Motors can be attributed to the disagreement with the union.
The Court is not impressed with the plaintiffs' contention that "good faith" under 15 U.S.C. § 1222 would require that Chrysler terminate all dealers who fell below MSR. The House Report on the Franchise Automobile Dealers Act (15 U.S.C. § 1221, et seq.) states that
"The bill, however, does not prohibit the manufacturer from terminating * * * the franchise of a dealer who is not providing the manufacturer with adequate representation. Nor does the bill curtail the manufacturer's right to cancel * * * an inefficient or undesirable dealer's *658 franchise." 1956 U.S.Code Cong. & Adm.News, pp. 4596, 4603.
The franchise agreement does not require that a dealer who falls below his assigned MSR must be terminated. It merely makes termination possible. The determination of whether or not to terminate a franchise is a management decision. It is noted that the MSR is the only performance standard in the franchise contract. The "good faith" required by 15 U.S.C. § 1222 is defined in 15 U.S.C. § 1221(e) to mean acting in "a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion [or] intimidation * * *." As applicable to termination of the franchise due to sales below MSR, "good faith" would require that termination be actually based on poor performance and not based, in fact, on some ulterior motive.
The Court in Madsen v. Chrysler Corp., supra, determined that a standard in which forty percent of the dealers sold under MSR and were subject to termination at all times was ridiculous and arbitrary. The plaintiffs here rely heavily upon this case for their position that the MSR requirement is "not a fair and equitable formula designed to protect dealers from coercion or intimidation." That case is not controlling here. The Court in that case found that the termination of the dealer's franchise by Chrysler was not, in fact, due to failure to meet MSR. The Court found that Chrysler was pleased with the dealer's performance and had expressed such pleasure to him. The equities in that case were clearly on the dealer's side. The present case presents a different picture entirely. The mere fact that sixty-two out of one hundred sixty-two dealers in the St. Louis region failed to meet their Minimum Sales Responsibility during the period of October 1967 to April 1968 does not lead this Court to the decision at this stage of the hearing that it is probable that such a standard shows a lack of good faith, per se.
The plaintiffs have not shown that there is a reasonable possibility that they will succeed on the merits of Count III at a final hearing. A temporary injunction based upon Count III would be inappropriate. See Bateman v. Ford Motor Co., 204 F.Supp. 357 (E.D.Pa. 1962); and A.F.L. Motors, Inc. v. Chrysler Motors Corp., 183 F.Supp. 56 (E.D.Wis.1960). The same evidence and considerations discussed with relation to Count III also make inappropriate a temporary injunction based upon Counts IV and V.