Filed 12/17/14  Rosilho v. Young CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| MAURICIO ROSILHO, | B249011 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC457174) |
| v. | |
| DAVID LI-MIN YOUNG, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robert L. Hess, Judge.  Affirmed.

Law Office of Steven P. Chang, Gene H. Shioda and Berk W. Nelson for Defendant and Appellant.

Duane Morris, Cyndie M. Chang, Yvette D. Roland, and Christopher B. Yeh for Plaintiff and Respondent.

_____

## INTRODUCTION

David Li-Min Young appeals from a pretrial order granting a preliminary injunction prohibiting him from accessing bank accounts and selling real property, pending trial of respondent Mauricio Rosilho's claims against him for fraud. He contends there was insufficient evidence to support the grant of the preliminary injunction, and that the injunction was overbroad. Following issuance of the preliminary injunction, a trial was held at which the jury found appellant liable for fraud and awarded respondent $941,250 in damages and punitive damages. Thereafter, the trial court awarded respondent prejudgment interest in the amount of $843,599.90, and entered a judgment containing a new preliminary injunction.

Respondent contends the instant appeal is moot, as the initial preliminary injunction is no longer in effect. Alternatively, respondent argues the trial court did not abuse its discretion in granting the preliminary injunction. We conclude the appeal is not moot, but discern no reversible error in the court's issuance of the initial preliminary injunction. Accordingly, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On July 20, 2011, respondent, a resident of Brazil, filed a first amended complaint against appellant Young, Jimmy C. M. Chen, and various Roe defendants.[1] The complaint alleged that respondent and appellant were joint owners of two parcels of real property located in Los Angeles County. It further alleged that on or about August 29, 2003, appellant caused respondent's interest in the two properties to be conveyed to himself by executing two grant deeds purporting to contain respondent's signature. It was alleged that Chen notarized the forged deeds despite actual knowledge that respondent had not signed the

---

[1]     Chen is not a party to this appeal.

2

documents. The complaint noted that the grant deeds had signatures and printed names for "Rosilho Mauricio," although respondent's actual name is "Mauricio Rosilho." Appellant then allegedly sold the properties on or about September 23, 2003, for an amount not less than $2,030,000. The complaint alleged that because defendants fraudulently concealed the facts from respondent, he did not learn of the improper transfer of his interest in the properties until July 2010. The complaint sought damages of not less than $676,666 (respondent's share of the sale proceeds), a declaration that the grant deeds were void and should be set aside, disgorgement, restitution, punitive damages, attorney fees and costs, and any other relief deemed just and proper.

On March 5, 2013, respondent filed an ex parte application for a temporary restraining order (TRO) and preliminary injunction to freeze appellant's assets. Respondent sought to enjoin appellant, his employees and agents, his corporate entities, and all other persons acting in concert with appellant, (1) from withdrawing, transferring, or disposing of any money obtained in any bank or accounts, and (2) from selling, transferring, encumbering or disposing of any assets or real property owned and/or controlled by appellant, including, without limitation, (a) real property located at 5043 Sereno Drive, Temple City, California, and (b) real property located at 1085 San Marino Avenue, San Marino, California. Respondent noted that aside from the two identified properties, he had been unable to identify any other California properties owned by appellant. According to respondent, good cause existed for a TRO because appellant, a resident of Brazil, "appears to [be] in the process of divesting his California assets in order to be judgment-proof in the event [respondent] obtains a judgment against [appellant] in this action. As recently as February 8, 2013, [appellant] was present at the 5043 Sereno Drive property, where he forced his 96-year-old mother and his nephew,

3

both current residents, to move out of the property, and told relatives who were present that he was doing so in order to sell the property as soon as possible, by March, due to this lawsuit." Respondent contended that he was entitled to a preliminary injunction because (1) it was likely respondent would prevail on his claims against appellant, and (2) the interim harm respondent would suffer if an injunction were not issued outweighed the interim harm appellant would suffer if the injunction were issued.

In support of the application, respondent submitted declarations from three of appellant's relatives. Marina Chung, appellant's sister-in-law, stated that appellant had evicted her son (Jonathan Chung-Young) and appellant's mother, who was 96 years old and suffering from dementia, from the Sereno Drive property on February 8, 2013. Appellant's nephew, Chung-Young, stated that he was present during the eviction process. Teresa Landis, appellant's niece, stated that appellant informed her he had moved his mother out of the house in which she had been living for the last 16 years because he intended to sell it. Appellant also told Landis he needed to sell the Sereno Drive property as soon as possible, as he was involved in a lawsuit. He already had moved some of his mother's belongings to storage. All three declarants stated that appellant was present at the house on February 8.

Concurrent with the application, respondent moved for discovery sanctions. In the motion for sanctions, respondent contended that appellant had improperly hindered respondent's efforts to take his deposition in Los Angeles. Respondent noted that on February 8, 2013, respondent's counsel told the court that appellant could not afford to travel to the United States to have his deposition taken in Los Angeles, and said appellant could not be reached because of a "time difference." In fact, appellant was in Los Angeles County, evicting his mother from the Sereno

4

Drive property. Respondent sought sanctions in the amount of $31,242 for reimbursement of fees and costs.

Appellant opposed the TRO application. He argued that respondent's application was effectively a broad writ of attachment not in compliance with the attachment statute. In a declaration, appellant admitted he was in Los Angeles from January 30 through March 1, 2013, but contended he was in the United States to assist his mother. He stated that his mother had called him to say she was being abused by Marina Chung and Jonathan Young-Chung, and he had promised to take care of her immediately. He denied that his mother had dementia. Appellant further stated that he had arranged for his mother's admission into a care facility, and for movers to come to the property on February 8, 2013. He denied telling anyone he was planning to sell the Sereno Drive property. He argued there was no credible evidence that he was divesting his assets. He stated that the monies in the bank accounts were to pay for his mother's expenses, and that neither the Sereno Drive property nor the San Marino property were listed for sale. Finally, appellant argued that respondent would likely not prevail on the claims against him, as there was no evidence he had forged respondent's signature, and the statute of limitations barred recovery.

Respondent filed a reply, arguing that appellant's factual assertions lacked credibility. Respondent noted that appellant claimed to have learned of the abuse of his mother in December 2012, but did not come to Los Angeles to assist her until a month later. Respondent further observed that if appellant had sought to protect his mother from abuse by Chung and her son, he could easily have evicted them, while permitting his mother to remain in the house she had occupied for 16 years. Chung filed a further declaration, disputing the claims of elder abuse and attaching pictures of the medications appellant's mother was taking for her

5

dementia. Landis also filed a further declaration, stating, "I specifically remember that on February 8, 2013, David Young told me that he needed to sell off of [*sic*] his properties in the United States, including the 5043 Sereno Drive property, and he said he had already sold 1085 San Marino Ave. property, because of this lawsuit."

At the March 6, 2013 hearing on the TRO application, the trial court noted its surprise at learning that appellant had been in the United States on February 8, the day his counsel (Berk W. Nelson) led the court to believe appellant was in Brazil. Nelson responded that he had been told appellant was in Brazil. The court noted, "[I]t is apparent to me that things that were apparently conveyed to you by your client were either omitted, material things, or they were inaccurate." When asked by the court what harm would occur if the TRO were granted, counsel stated appellant would be denied access to his assets for his "financial well-being." The court rejected the argument, noting that appellant's counsel previously had represented that appellant had assets outside the United States. It granted the TRO and set the hearing on the motion for a preliminary injunction for March 29, 2013.

At the March 29, 2013 hearing, attorney Stephen Chang appeared for appellant. When the trial court brought up the prior representation by attorney Nelson that appellant was in Brazil in February, Chang stated that Nelson was "not prepared," never had "direct communication with Mr. Young," and should not have made "assumptions." Appellant's counsel objected to the preliminary injunction sought, arguing that it was a writ of attachment disguised as an injunction. The court disagreed, ruling that it was permissible under Code of Civil Procedure section 526, subdivision (a)(3).[2] Appellant's counsel then stated that if

---

[2]    All further statutory citations are to the Code of Civil Procedure, unless otherwise indicated.

6

the court were inclined to grant the preliminary injunction, respondent should be required to post a bond. With respect to the assets to be restrained, respondent's counsel indicated she knew of two bank accounts totaling $23,000 in deposits, and the two identified real properties, estimated at $1.35 million. Appellant's counsel claimed the properties were worth in excess of $3.8 million. The court noted that the net value of the properties was unknown, as no information had been presented about any encumbrances on the properties. Appellant's counsel also argued that freezing the bank accounts would "restrict" appellant's access to funds to pay for his legal defense, stating, "It will cost an extra letter of costs to wire funds from overseas."

Following the hearing, the trial court issued its order granting the motion for a preliminary injunction. The court found that, "[i]nconsistencies in Mr. Young's declaration and the lack of any real evidence of harm to the defendant if the motion is granted suggest[] the showing made by plaintiff is sufficient both as to probability of success on the merits, the irreparable injury, and the balance of hardship." It required respondent to post an undertaking bond of $100,000, pursuant to section 529.[3] An order granting the preliminary injunction was entered June 21, 2013; notice of the posting of the bond was filed July 1.

Appellant filed a notice of appeal from the order granting the preliminary injunction. Pending appeal, a jury trial was held on respondent's claims, and the jury found in favor of respondent. Specifically, the jury found (1) that respondent did not sign the grant deeds, (2) that respondent did not know about the forged

---

[3]    Section 529, subdivision (a) provides: "On granting an injunction, the court or judge must require an undertaking on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction."

deeds before March 11, 2008 (the limitations period), (3) that appellant had fraudulently concealed the forged deeds from respondent, and (4) that respondent suffered $753,000 in damages as a result of appellant's fraud. The jury also found that respondent was entitled to punitive damages in the amount of $188,250. Subsequently, the trial court determined that respondent was entitled to compound prejudgment interest in the amount of $834,599.90. A judgment after trial in the amount of $1,775,849.90, containing a new preliminary injunction, was entered on October 21, 2014.

## DISCUSSION

A. *The Appeal of the Prejudgment Preliminary Injunction is not Moot.*

As an initial matter, respondent contends the instant appeal is moot, as the preliminary injunction is no longer in effect. Respondent notes that a judgment has been entered pursuant to the jury's verdict, and the prejudgment preliminary injunction has been replaced by, or merged into, the postjudgment preliminary injunction. Appellant contends the appeal is not moot, as he has a potential cause of action against the injunction bond. We agree the appeal is not moot.

First, the prejudgment preliminary injunction was not merged into the final judgment. As the United States Supreme Court has explained: "In the case of the usual preliminary injunction, the plaintiff seeks to enjoin, pending the outcome of the litigation, action that he claims is unlawful. If his lawsuit turns out to be meritorious -- if he is found to be entitled to the permanent injunction that he seeks -- even if the preliminary injunction was wrongly issued . . . its issuance would in any event be harmless error. . . . Hence, it is reasonable to regard the preliminary injunction as merging into the final one: If the latter is valid, the former is, if not procedurally correct, at least harmless. A quite different situation obtains in the

8

present case, where . . . the substantive validity of the final injunction does not establish the substantive validity of the preliminary one. For the latter was issued not to enjoin unlawful conduct, but rather to *render* unlawful conduct that would otherwise be permissible, in order to protect the anticipated judgment of the court . . . ." (*Grupo Mexicano De Desarrollo v. Alliance Bond Fund* (1999) 527 U.S. 308, 314-315, first italics omitted (*Grupo Mexicano*).)

Here, the judgment following trial established that appellant fraudulently deprived respondent of his interest in two real properties. The judgment, however, did not establish the substantive validity of the prejudgment preliminary injunction, which enjoined appellant from accessing bank accounts and selling properties not related to the sale of the two disputed properties. (Cf. *Sheward v. Citizens' Water Co.* (1891) 90 Cal. 635, 637-638 [dismissing appeal from preliminary injunction, as the order restraining defendant water company from shutting off water supply to plaintiff's house merged into judgment permanently enjoining defendant from shutting off water supply].)

Second, were we to find the preliminary injunction was improperly issued, appellant would have a potential cause of action against the injunction bond, which would preserve our jurisdiction over this appeal. As explained in *Rees v. Gardner* (1960) 185 Cal.App.2d 630 (*Rees*), "as a prerequisite to the issuance of the injunction, respondents posted an undertaking, the condition of which was that appellants should be paid such damages as they 'may sustain by reason of said preliminary injunction, if the Court finally decides that the applicant was not entitled thereto.' If it should be determined on this appeal that respondents were not entitled to the injunction, then appellants may be entitled to recover upon this undertaking." (*Id.* at p. 633; see § 529, subd. (a) [if court finally decides applicant was not entitled to injunction, applicant must pay the party enjoined any damages

9

sustained due to injunction].) Thus, there is a present controversy between the parties, and the case is not moot. Accordingly, we have jurisdiction to review the trial court's order granting the prejudgment preliminary injunction. (See *Rees*, *supra*, at pp. 632-633 [rejecting contention that issues on appeal were moot because the preliminary injunction was no longer operative, as appellants had potential claim on injunction bond]; accord *Grupo Mexicano*, *supra*, 527 U.S. at p. 314.)

B.    *The Court did not Err in Granting the Preliminary Injunction.*

"As its name suggests, a *preliminary* injunction is an order that is sought by a plaintiff prior to a full adjudication of the merits of its claim. [Citation.] To obtain a preliminary injunction, a plaintiff ordinarily is required to present evidence of the irreparable injury or interim harm that it will suffer if an injunction is not issued pending an adjudication of the merits. [Citation.]" (*White v. Davis* (2003) 30 Cal.4th 528, 554, second italics omitted.) "[A]s a general matter, the question whether a preliminary injunction should be granted involves two interrelated factors: (1) the likelihood that the plaintiff will prevail on the merits, and (2) the relative balance of harms that is likely to result from the granting or denial of interim injunctive relief." (*Ibid.*) We generally review the trial court's ruling for abuse of discretion. (*Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 1250, 1260.) "A trial court will be found to have abused its discretion only when it has '"exceeded the bounds of reason or contravened the uncontradicted evidence."' [Citations.] Further, the burden rests with the party challenging the injunction to make a clear showing of an abuse of discretion. [Citations.]" (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69.)

Here, there was substantial evidence in the record to support the trial court's grant of a preliminary injunction. First, there was a strong likelihood that respondent would prevail on his claims against appellant. The evidence submitted -- the grant deeds transferring respondent's interest in two real properties to appellant -- strongly suggested that respondent's signature was forged, as his name was both printed and signed incorrectly. Although appellant contended the statute of limitations would bar recovery, it is undisputed that respondent asserted tolling of the statute of limitations due to fraudulent concealment. Thus, there was substantial evidence in the record that respondent was likely to prevail on the merits.

Second, substantial evidence supported the court's finding that the balance of harms favored the grant of a preliminary injunction. Respondent presented evidence that appellant, a resident of Brazil with assets outside the United States, was seeking to divest himself of California property to become judgment-proof in the instant lawsuit. Appellant admitted he moved his mother and her belongings out of her longtime residence on Sereno Drive on February 8, 2013. Landis stated that appellant told her he intended to sell the property as soon as possible because of this lawsuit and that he had already sold the San Marino property. Although appellant denied any plans to sell the two properties, the trial court was entitled to credit respondent's evidence over appellant's conflicting testimony. (See, e.g., *Estate of Reed* (1955) 132 Cal.App.2d 732, 735 ["'A reviewing court cannot reject testimony of a witness that has been believed by the trier of the fact unless it is a physical impossibility that it be true, or its falsity is apparent without resorting to inferences or deductions.'"]; see also Evid. Code, § 411 ["Except where additional evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact."].) This is particularly true where the

11

trial court already had evidence that appellant had been disingenuous with his counsel about his physical location and availability for deposition in Los Angeles. In short, respondent met his burden of showing that he would suffer irreparable injury were the preliminary injunction not granted, as appellant would be judgment-proof. (See *West Coast Constr. Co. v. Oceano Sanitary Dist.* (1971) 17 Cal.App.3d 693, 696, 700 [affirming preliminary injunction barring defendant from expending monies because plaintiff would suffer irreparable injury were defendant not able to pay damages, if ultimately awarded]; *Lenard v. Edmonds* (1957) 151 Cal.App.2d 764, 769 ["Obviously, it was reasonably necessary and fair to both sides to maintain the *status quo* pending the outcome of the litigation. Otherwise, appellant could have deliberately stripped himself of all assets and made it impossible for him to pay any judgment that might be secured."]; § 526, subd. (a) [a preliminary injunction may be granted: "(2) When it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action"; or "(3) When it appears, during the litigation, that a party to the action is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action, and tending to render the judgment ineffectual"].)

In contrast, the interim harm to appellant from the grant of the preliminary injunction was substantially less than the interim harm to respondent. The only harm identified by appellant was that the injunction would hinder him from accessing his financial resources to pay for a defense. At the hearing, however, appellant's counsel admitted appellant had foreign funds, arguing only that the extra cost to wire the funds would "restrict" appellant's access to money. The trial court was entitled to conclude that the cost of wiring funds from abroad was a

12

minor burden compared to the harm respondent might suffer if appellant became judgment-proof. Moreover, any harm appellant might suffer was mitigated by the imposition of a $100,000 bond. In sum, the balance of harms favored the grant of a preliminary injunction, and the trial court did not abuse its discretion in issuing it.

Appellant contends the broad scope of the preliminary injunction -- applying to all bank accounts and real property located in the United States -- exceeded the court's authority. He notes, for example, that no evidence was presented that he was dissipating money from his bank accounts. However, no evidence established that the identified bank accounts and real properties would be sufficient, by themselves, to satisfy any money judgment respondent might obtain. Respondent sought at least $676,666, plus interest, and punitive damages. He was ultimately awarded over $1.77 million. The bank accounts had deposits totaling $23,000 and the value of the two real properties, before any encumbrances, was unknown, but estimated by respondent to be $1.35 million. Thus, based on respondent's estimates, the total value of the identified assets was less than the amount he might ultimately be awarded. Nor did appellant represent that he had any other assets (subject to the court's jurisdiction) that would allow him to respond to a damages claim. In light of such evidence, it was within the court's authority to enjoin appellant from dissipating any cash or disposing of real property. (See *West Coast Constr. Co. v. Oceano Sanitary Dist.*, *supra*, 17 Cal.App.3d at pp. 696, 700 [preliminary injunction may be granted barring defendant from expending monies where defendant would be unable to pay damages, if ultimately awarded].)

Appellant's reliance on *Grupo Mexicano*, *supra*, 527 U.S. at page 330, *Pacific Decision Sciences Corp. v. Superior Court* (2004) 121 Cal.App.4th 1100, 1110 (*Pacific Decision*), and *Thayer Plymouth Center, Inc. v. Chrysler Motors Corp.* (1967) 255 Cal.App.2d 300, 307 (*Thayer*), is misplaced. *Grupo Mexicano* is

13

distinguishable, as it addressed only the general equitable powers of a federal district courts (see *Grupo Mexicano, supra*, at pp. 318, 325), expressly declining to address the equitable powers of state courts. (See *id*. at p. 319, fn. 3 [declining to address applicability of New York law to claim]; see, e.g., *Lenard v. Edmonds*, *supra*, 151 Cal.App.2d at p. 769 [Under California law, "[w]hile preliminary injunctions of the type here involved are more frequently granted in equitable proceedings such as rescission, there is no legal obstacle to the granting of such an injunction in a purely legal action for damages"].) Nor did the court discuss state statutes such as section 526, subdivision (a)(2) and (a)(3), which authorize the grant of a preliminary injunction to prevent irreparable injury or to preserve the status quo.

As to *Pacific Decision* and *Thayer*, appellant relies on them for the proposition that injunctive relief may not issue pursuant to section 526, subdivision (a)(4) or (a)(6), unless the applicant shows that monetary damages would not afford adequate relief, or that it would be extremely difficult to ascertain the amount of damages. (See *Pacific Decision*, *supra*, 121 Cal.App.4th at p. 1110; *Thayer*, *supra*, 255 Cal.App.2d at p. 307.) However, respondent did not seek a preliminary injunction pursuant to those two subsections. Rather, he sought a preliminary injunction to prevent irreparable harm by preserving the status quo and preventing appellant from rendering himself judgment-proof. (See § 526, subd. (a)(2) [irreparable injury] & (a)(3) [ineffectual judgment].) On this record, appellant has shown no abuse of discretion in the court's grant of the prejudgment preliminary injunction.

## DISPOSITION

The order is affirmed.  Respondent is entitled to his costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**



MANELLA, J.


We concur:




EPSTEIN, P. J.




WILLHITE, J.

15