VICTORY MOTORS OF SAVANNAH,
INC., d/b/a Victory Motors,
Appellant,

v.

CHRYSLER MOTORS CORPORATION,
Appellee.

No. 22459.

United States Court of Appeals
Fifth Circuit.

March 15, 1966.

Willis J. Richardson, Jr., and Richardson & Doremus, Savannah, Ga., for appellant.

Keith A. Jenkins, Detroit, Mich., Alexander A. Lawrence, Savannah, Ga., David W. Kendall, Walter B. Maher, Detroit, Mich., Bouhan, Lawrence, Williams & Levy, Savannah, Ga., of counsel, for appellee.

Before BROWN and COLEMAN, Circuit Judges, and GARZA, District Judge.

GARZA, District Judge:

This case involves another attempt by an automobile dealer whose franchise was canceled by the manufacturer to get damages for such cancellation.

On July 11, 1958, Chrysler Motors Corporation, the defendant below, and Victory Motors of Savannah, Inc., the plaintiff, entered into Chrysler and Imperial Direct Dealer Agreements.

On February 15, 1962, Victory Motors of Savannah, Inc., hereinafter referred to as Victory, was informed that its dealership was being canceled.

Victory then filed its complaint contending that the defendant, Chrysler Motors Corporation, violated 15 U.S.C.A. § 1221 et seq., known as the Automobile Dealers Suits Against Manufacturers Act, and sometimes also known as the Automobile Dealers Franchise Act and as the Automobile Dealers Day in Court Act; and, further, that Chrysler had breached its contract by cancelling the plaintiff's automobile franchise.

The case was tried to a jury, and at the close of plaintiff's evidence, the defendant Chrysler moved for and was granted a directed verdict on grounds that the plaintiff had not "made out a case." We affirm.

Chrysler Motors Corporation contended that it had canceled the plaintiff's dealership because the plaintiff had not met its Minimum Sales Responsibility as established by their original contractual agreement, and particularly Paragraph 7 thereof which reads, in part, as follows:

"Direct Dealer agrees to sell energetically at retail in the Sales Locality described in Paragraph 1 of this agreement Chrysler passenger cars and Chrysler passenger car parts and accessories. Direct Dealer agrees to sell at retail in such Sales Locality the number of new Chrysler passenger cars necessary to fulfill Direct Dealer's Minimum Sales Responsibility, as defined below.

"Direct Dealer's Minimum Sales Responsibility will be determined as follows:

"From time to time, but at least once a year, Chrysler will compute the ratio of the number of new Chrysler passenger cars registered in the most recent 12 month period for which registration figures are available in the Chrysler Sales Region in which Direct Dealer is located to the number of all new passenger cars so registered in that Region. The ratio thus obtained will be applied to the number of all new passenger cars registered during the same 12 month period in Direct Dealer's Sales Locality. The resulting number (and the percentage share of market that such number represents for the Sales Locality) will be Direct Dealer's Minimum Sales Responsibility

for this same twelve (12) month period, subject to such adjustment as is described below.

"Where appropriate, Chrysler will adjust Direct Dealer's Minimum Sales Responsibility to take into account the availability of passenger cars, local conditions, revisions in Direct Dealer's Sales Locality description, the recent trend in Direct Dealer's sales performance, and the other factors, if any, directly affecting sales opportunity. * * * "

The plaintiff attempted to show by parol evidence that there were oral agreements between it and the defendant's representatives bearing on the ratio provision to the extent that it was not applicable, and that defendant's cancellation of its dealership on this basis was clearly an unwarranted breach of contract. Plaintiff also contended that Paragraph 7, above, was so ambiguous as to necessitate clarification by parol evidence as to its true intent and meaning.

The trial court refused to allow the plaintiff to change the meaning of Paragraph 7 of the contract by such a method, and the Appellant here complains of the court's action.

The Appellant Victory attempted to show that because there had been no Chrysler or Imperial dealer in Savannah for approximately two years prior to its getting the dealership, it was agreed that he had to sell no set quota of cars.

The dealership agreement, in Paragraph 5 thereof, specifically stated that it canceled and superseded all earlier agreements, written or oral.

■ The District Court was correct in holding that Paragraph 7 was not ambiguous and that the parties to the agreement intended to execute a totally integrated contract which superseded any previous oral agreements by and between the parties.

The Appellant argues that Section 20–704(1)[1] of the Georgia Code permits introduction of parol evidence to prove the oral agreement as to the minimum ratio requirement.

■ This section of the Georgia law does not permit parol evidence here because there was no latent or patent ambiguity, and the written agreement was intended to and did speak the entire contract.

The more applicable section of Georgia law to the facts here is § 38–501, Georgia Code Annotated, which states that:

"Parol contemporaneous evidence is inadmissible generally to contradict or vary the terms of a valid written instrument."

Having determined that the court below did not err in denying plaintiff's attempt to introduce parol evidence as to the applicability of the Minimum Sales Requirement, we now turn to the question of whether with the evidence before it the court below erred in directing a verdict for the defendant.

The evidence is abundant that in none of the years in question did Victory Motors meet its minimum sales obligations as set out by the ratio under Paragraph 7.

A ratio very similar to the one in question here was found valid by the Court of Appeals for the Third Circuit in Milos v. Ford Motor Co., 317 F.2d 712 (3 Cir. 1963), cert. den. 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 125.

The plaintiff brought forth evidence of a recession in the Savannah area during 1960 and 1961, and argues that the defendant failed to reduce its Minimum Sales Responsibility formula in accordance with that recession. The formula

---

1. "20–704. Rules of interpretation—The following rules, among others, may aid in arriving at the true interpretation of contracts: 1. Parol evidence is inadmissible to add to, take from, or vary a written contract. All the attendant and surrounding circumstances may be proved, and if there is an ambiguity, latent or patent, it may be explained; so if a part of a contract only is reduced to writing (such as a note given in pursuance of a contract), and it is manifest that the writing was not intended to speak the whole contract, then parol evidence is admissible."

is self-adjusting to take into consideration such situations. There was nothing in the plaintiff's case that would in any way show that Chrysler's determination of the dealers Minimum Sales Responsibility was anything but fair and reasonable, and in no way did it prove that the Minimum Sales Responsibility quotas were coercive.

Proof offered that representatives of Chrysler were insisting Victory sell more cars, that it advertise in a certain way, that it hire more salesmen, are things which are not prohibited by the Automobile Dealers Suits Against Manufacturers Act.

The term "good faith" is defined in the Act as a "duty * * * to act in a fair and equitable manner * * * so as to guarantee * * * freedom from coercion, intimidation, or threats of coercion or intimidation * * *: Provided, That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith." 15 U.S.C.A. § 1221(e).

The acts of the representatives of the manufacturer quoted immediately above are certainly excluded by the Act from constituting a lack of good faith.

The plaintiff also testified that representatives of the defendant manufacturer had threatened to establish another Chrysler dealership in Savannah. This was never done until his own dealership had been canceled.

There was nothing in the dealership agreements that would prevent the Appellee from establishing a new dealer in the Savannah area; and if it had established one, the plaintiff would have had to show that its establishment was a threat of coercion or intimidation amounting to bad faith on the part of Chrysler.

The plaintiff brought forth testimony that representatives of Chrysler threatened to cancel his franchise, and also asked that he give his franchise up by mutual agreement.

The Automobile Dealers Suits Against Manufacturers Act was not intended to prohibit a threat of cancellation of a franchise if there should be a prolonged failure on the part of the dealer to heed recommendations or yield to persuasion of the manufacturer that he make a bona fide effort to comply with his undertakings. Kotula v. Ford Motor Co., 338 F.2d 732 (8 Cir. 1964), cert. den. 380 U.S. 979, 85 S.Ct. 1333, 14 L.Ed. 2d 273 (1965). Neither can a party be accused of lack of good faith by trying to get the other party to a contract to mutually agree to terminate it.

The facts before the trial court showed conclusively that Chrysler Motors Corporation canceled the dealerships of Victory Motors of Savannah, Inc., because of its failure to comply with its Minimum Sales Responsibility.

As stated by this Court in Woodard v. General Motors Corp., 298 F.2d 121 (1962), cert. den. 369 U.S. 887, 82 S.Ct. 1161, 8 L.Ed.2d 288 (1962):

"We do not think that the good faith requirement, whether viewed in or outside of the context of coercion, prevents a manufacturer from terminating a contract with a dealer where the dealer has, over a long period of time, violated a valid and material clause of the contract and has failed to comply with the continuing insistence of the manufacturer upon performance."

With that pronouncement of this Court before it, even viewing the evidence of the plaintiff below in the most favorable light, the trial court could do nothing but grant the motion for directed verdict in favor of the defendant, Chrysler Motors Corporation.

Affirmed.