398 F.2d 80
 COLUMBUS SERVICES, INC., Plaintiff-Appellant,
v.
PREFERRED BUILDING MAINTENANCE, INC., and Richard D. Brown, John E. Bremer, Forrest S. Tarr, Wally G. Gast, Raymond A. Gast, and Fred C. Gast, Defendants-Appellees.
 No. 18151.
 United States Court of Appeals Sixth Circuit.
 July 23, 1968.
 
 R. Malcolm Cumming, Grand Rapids, Mich., for appellant; Wallson G. Knack, Warner, Norcross & Judd, Grand Rapids, Mich., on brief.
 Niel A. Weathers, Grand Rapids, Mich., for appellees; H. Rhett Pinsky, Law, Buchen, Weathers, Richardson & Dutcher, Grand Rapids, Mich., on brief.
 Before EDWARDS, CELEBREZZE and McCREE, Circuit Judges.
 PER CURIAM.
 
 
 1
 This action arose out of a contract between the plaintiff, Columbus Services, Inc., a corporation organized under the laws of the State of Pennsylvania and defendant, Preferred Building Maintenance, Inc., a corporation organized under the laws of the State of Michigan. The individual defendants are officers and/or stockholders of the defendant Corporation [hereinafter all parties defendant are referred to as "defendant"].
 
 
 2
 On May 15, 1963, plaintiff entered into a contract with defendant, at that time known as Columbus Services of Michigan, Inc. Plaintiff in addition to providing the name "Columbus," undertook to supply the defendant with complete information on the operation of a custodial service business, and to hire and train a district manager who would reside in Grand Rapids, Michigan, and who would be qualified to manage on a full-time basis the defendant's business. Defendant agreed to reimburse plaintiff for the salary of the district manager and for the expenses of other personnel sent by plaintiff to Michigan. The original term of the contract was five years, although defendant was given an option of cancelling the contract on six months' notice. The contract provided that plaintiff would receive seven per cent of the gross receipts as compensation.
 
 
 3
 In the spring of 1964, plaintiff and Lear Siegler, Inc. of Grand Rapids, Michigan, reached an agreement providing that plaintiff would furnish consulting services for janitorial work at the Lear Siegler plant. Shortly thereafter, plaintiff agreed to negotiate a new contract that would allow the defendant to participate in the proceeds of consulting contracts such as the Lear Siegler contract. Both plaintiff and defendant agreed that the term of the contractual arrangement between them should be extended in the new contract.
 
 
 4
 The contract, executed on June 1, 1964, in effect restated generally the terms and conditions of the 1963 contract. Relevant changes included an increase of the life of the contract to fifty years by automatic renewals at the end of each five year period, an addition of certain covenants restricting competition in the event of termination, and a clause providing that the defendant would receive forty per cent of the net profits from consulting contracts and sixty per cent of the net profits of janitorial supplies sold by plaintiff to parties under consulting contracts. Plaintiff was also authorized to name two members to corporate defendant's Board of Directors.
 
 
 5
 To fulfill its obligations under both the 1963 and 1964 contracts, plaintiff entered into an employment contract with Carl Miller on May 15, 1963, in which Miller agreed to manage the defendant's business. After performing for almost a year, the defendant terminated its relationship with plaintiff in May of 1965. Miller also terminated his relationship with plaintiff at approximately the same time.
 
 
 6
 In its complaint, plaintiff alleged in Count I that the defendant, as a result of its breach of contract, had continued to engage in business, utilizing plaintiff's trade secrets, know-how, and techniques. In Count II plaintiff alleged that the defendant wrongfully and intentionally induced Miller to breach his contract, and that "at defendant's request, Carl Miller, to plaintiff's detriment, did divulge valuable information of a confidential and unique character including trade secrets and techniques to defendants."
 
 
 7
 The District Court, having before it a motion to dismiss, made on behalf of the defendant, and certain documents and depositions, treated the motion to dismiss as a motion for summary judgment and granted it. It held that the covenants not to compete were void because prohibited by Michigan Statutes Annotated § 28.61, which says in part:
 
 
 8
 "Contract not to engage in business; illegality.
 
 
 9
 Section 1. All agreements and contracts by which any person, co-partnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void." M.S.A. § 28.61 (1962), [Comp. Laws Mich.1948, § 445.761].
 
 
 10
 It also held that the plaintiff could not maintain the action since it had not qualified to do business in Michigan, as required by Michigan Statutes Annotated § 21.94 [Comp.Laws Mich.1948, § 450.93, Pub.Acts 1956, No. 97]. It specifically held that the record before the Court allowed the holding that the plaintiff's activities constituted intrastate rather than interstate commerce and were thus subject to the Michigan Statutes.
 
 
 11
 After due consideration of the briefs and arguments the Court is of the opinion that the conclusions of the District Court cannot be substantiated without more fully exploring the factual problems which underlay the legal conclusions. Factual problems as to whether plaintiff's business in Michigan was intrastate or whether it had interstate aspects of importance, the underlying facts on the basis of which covenants not to compete must be judged, the necessary facts to require adjudication of the trade secrets issues, and others, are matters which can best be resolved only after a full inquiry into the facts upon trial of the merits.
 
 
 12
 "This Court has on several occasions expressed the view that a trial judge should be slow in disposing of a case of any complexity on a motion for summary judgment, that while such a judgment wisely used is a praiseworthy and timesaving device, yet such prompt dispatch of judicial business is neither the sole nor the primary purpose for which courts have been established, and that a party should not be deprived of an adequate opportunity to fully develop his case by witnesses and a trial, when the issues involved make such procedure the appropriate one. (Citations omitted).
 
 
 13
 "It is often the case that although the basic facts are not in dispute, the parties in good faith may nevertheless disagree about the inferences to be drawn from these facts, what the intention of the parties was as shown by the facts, or whether an estoppel or a waiver of certain rights admitted to exist should be drawn from such facts. Under such circumstances the case is not one to be decided by the Trial Judge on a motion for summary judgment." S. J. Groves & Sons Company v. Ohio Turnpike Commission, 315 F. 2d 235, 237-238 (6th Cir. 1963).
 
 
 14
 We are of the opinion that this case requires a full inquiry into the facts under the usual trial procedure. From the record before us we cannot say that it is clear that "there is no genuine issue as to any material fact." Accordingly, the judgment entered below is vacated and the case is remanded for proceedings consistent with this opinion; in so remanding we express no judgment on either the validity or the fairness of the contract.